IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

RODNEY A. FOX                                                                                           PLAINTIFF

      v.                                              Civil No. 12-3034

SHERIFF ROGER VICKERS;
and JAIL ADMINISTRATOR
NATHAN ROGERS                                                                                     DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by the Plaintiff pursuant to the terms of 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis.*

Plaintiff is currently incarcerated in the South Central Correctional Center located in Licking, Missouri. The events that are subject to this complaint occurred when he was incarcerated in the Marion County Detention Center (MCDC). Plaintiff maintains his constitutional rights were violated in the following ways: (1) he was denied access to legal materials; (2) he was subjected to unconstitutional conditions of confinement; and (3) he was transferred to a different facility in retaliation for having submitted grievances.

Defendants have filed a motion for summary judgement (Doc. 38). Plaintiff filed a response (Doc. 43). Both parties have also filed a number of reply briefs (Docs. 44, 48, 49, 50). Each side apparently wanting the last word. The motion is now ready for decision.

### 1.  Background

On February 4, 2012, Plaintiff was arrested on charges of aggravated robbery in Marion County. *Defendants' Exhibit* A at pgs. 9-10. Plaintiff was incarcerated in the MCDC from February

4th to February 22nd.  *Defts' Ex.* B.

At the time, the MCDC was overcrowded.  *Defts' Ex.* B.  They booked in an unusually high number of inmates.  *Id.*  On February 22nd, Plaintiff and other inmates were transferred to the Boone County Detention Center.  *Id.*  The conditions there were better than the conditions at the MCDC.  *Defts' Ex.* A *(Plaintiff's Deposition)* at pg. 6.[1]  Plaintiff remained incarcerated there for several weeks before he was extradited to Missouri.  *Id.* at pg. 19.

Plaintiff alleges that his rights were violated because of the following: no fire sprinkler system; no batteries in the smoke detector; no fire extinguishers; no emergency call buttons; no law library or access to anyone trained in the law; not allowed to use soap except when showering; not allowed to use his tooth brush and tooth paste except in the morning during shower time (4:00 am to 5:00 am); and an inadequate heating system.

Plaintiff was able to shower every day.  *Defts' Ex.* A at pg. 14.  When the inmates went to shower, they were given a "Styrofoam cup with a toothbrush, [a] little tube of tooth paste, a comb and a pump spray deodorant."  *Id.* at pg.11.  Inmates were only allowed to use these items during shower time.

Plaintiff's cell had a toilet and sink combination in it.  *Defts' Ex.* A at pg. 13.  The sink had running water.  *Id.*  However, there was no soap to use after using the facilities or before or after meals.  *Id.*

Plaintiff asked for legal material, specifically the statutes relevant to the criminal charges against him, so he could "check up" on his state criminal case.  *Defts' Ex.* A at pg. 16.  In response, he was told he would have to through the courts.  *Id.* at pg. 17.  Plaintiff was represented by a public

---

[1] Page references are to the CM/ECF page numbers contained in the header and not the deposition page numbers.

defender, Barbara Malm. *Id.* Plaintiff could communicate with her by mail, tried on one occasion to reach her by phone, and she came to the jail once to visit him. *Id.* at pg. 18. Plaintiff indicates he asked a number of times to use the phone and his requests were denied. *Id.* Plaintiff did not believe he was being properly represented and sought access to legal materials to "help [him] fight [his] case." *Id.* at pg. 19. Plaintiff and his attorney were able to negotiate to get the charges reduced. *Id.* at pg. 21.

Because there were no fire extinguishers, no smoke or carbon monoxide detectors, and no sprinkler systems, Plaintiff states he feared what would happen if a fire started. *Defts' Ex.* A at pg. 15. There were no fires at the MCDC while Plaintiff was incarcerated there. *Id.* Plaintiff believes there may have been a fire extinguisher in "the office and probably some up front." *Id.* at pg. 16.

Plaintiff also believes his muscles deteriorated as a result of being confined to the cell. *Defts' Ex.* A at pg. 25. He did not seek medical treatment. *Id.* While he could have done exercises in his cell, Plaintiff stated it was so cold he "pretty much" had to stay under the "little two covers" that they were given or you would "freeze." *Id.*

### 2.  Applicable Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3.  Discussion

Defendants now move for summary judgment on each of Plaintiff's claims. Each claim will be addressed in turn.

#### A.  Denial of Access to Legal Materials

"Inmates undeniably enjoy a constitutional right of access to the courts and the legal system." *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996)(*citing Lewis v. Casey*, 518 U.S. 343 (1996)); *Bounds v. Smith*, 430 U.S. 817 (1997)). The right of access requires the provision of "prisoners with adequate law libraries or adequate assistance from persons trained in the law," *Bounds*, 430 U.S. at 828, to challenge their criminal charges, convictions, and sentences directly or collaterally or to challenge the conditions of their confinement through civil rights actions. *Casey*, 518 U.S. at 351; *see also Cody v. Weber*, 256 F. 3d 764, 767-68 (8th Cir. 2001)("right of access to the courts guarantees an inmate the ability to file lawsuits that directly or collaterally attack the inmate's sentence or that challenge the conditions of the inmate's confinement, but it does not extend to the right to 'discover grievances' or to 'litigate effectively once in court'")(*quoting Casey*, 518 U.S. at 354-55); *Klinger v. Department of Corrections*, 107 F.3d 609, 617 (8th Cir. 1997) (to prevail on access-to-courts claim, inmate must show actual injury or prejudice even if denial of access to library is complete and systematic).

In this case, Plaintiff had an appointed attorney in his criminal case. He had the ability to contact her. With his attorney, he was able to negotiate a favorable plea agreement. He missed no deadlines with any Courts and was not prevented from filing any cases. Defendants correctly assert that Plaintiff suffered no actual injury and this claim is insufficient. *See e.g., Hartsfield v. Nichols*, 511 F.3d 826, 833 ("Absent an articulation of how the alleged wrongful conduct actually blocked [Plaintiff's] access to filing a complaint, or caused a filed complaint to be deficient, [Plaintiff's] alleged injuries are merely speculative").

### B. Unconstitutional Conditions of Confinement

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833 (1998)(citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

In this circuit, the deliberate indifference standard of the Eighth Amendment is applied to all conditions of confinement claims whether the claims are brought by a pretrial detainee or a convicted prisoner. *See Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006)(deliberate indifference standard of the Eighth Amendment applies to all claims that prison officials failed to provide adequate food, clothing, shelter, etc.); *Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994)("[I]n this circuit, the standards applied to Eighth Amendment and Fourteenth Amendment claims have been the same.").

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. The Eighth Amendment prohibits punishments that deprive inmates of the minimal civilized measure of life's necessities." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). Jail or prison officials must provide reasonably adequate ventilation,

sanitation, bedding, hygienic materials, food, and utilities.

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004)(*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner" *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." Id. The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

In evaluating conditions of confinement claims, the court is to "look to a number of factors, including the size of the detainee's living space, the length of the confinement, the amount of time spent in the confined area each day, and the opportunity for exercise." *Ferguson v. Cape Girardeau County*, 88 F.3d 647, 650 (8th Cir. 1996). The conditions are to be viewed in the totality of the circumstances. *Id.*

Keeping these principles in mind, I turn to an examination of the conditions of confinement alleged to exist in this case. First, Plaintiff contends he was denied access to soap, a toothbrush, and toothpaste except during shower time. He was allowed to shower on a daily basis and was provided with soap, a toothbrush, tooth paste, and deodorant at that time. His cell contained an operable toilet/sink combination. He was not prevented from rinsing his hands after use of the toilet or before or after eating. Clearly he has stated no claim of constitutional dimension with respect to hygiene materials.

Second, Plaintiff contends there was inadequate protection from fires and other safety hazards. During his deposition, Plaintiff testified that there was probably a fire extinguisher in the office and more up front where he could not see them. Defendants have also provided the Court with the detention facility compliance reports for May 27, 2011, and May 18, 2012. *Defts' Ex.* B-2 & B-3. These reports are complied by the Criminal Detention Facilities Review Committee after conducting an inspection of the facility. Both reports indicate that the facility had: been inspected by the local Fire Department in the past year; had a written fire plan and personnel were familiar with it; a written plan for all other emergencies and detailed evacuation procedures; exits plainly marked; properly stored cleaning fluids, toxic and caustic materials; and had up-to-date fire fighting equipment and access to a compressed air breathing apparatus. *Defts' Exs.* B-2 at pg. 6 & B-3 at pg. 6.

"Prisoners have the right not to be subjected to the unreasonable threat of injury or death by fire and need not wait until actual casualties occur in order to obtain relief from such conditions." *Hoptowit v. Spellman*, 753 F.2d 779, 783-84 (9th Cir. 1985); *see also Hadix v. Johnson*, 367 F.3d 513, 528-30 (6th Cir. 2004)(review of cases involving fire safety). Notwithstanding Plaintiff's allegations, on the record before me, there is no genuine issue of material on this claim. Merely because Plaintiff did not see fire extinguishers and other safety equipment and plans does not mean they did not exist. As noted above, the facility passed inspection by the fire department and its safety provisions, including plans for evacuation of the prisoners, were noted to be in place.

Third, Plaintiff maintains he was subjected to cold temperatures. He alleges that he had to remain huddled under his two blankets to stay warm.[2] Again, the facility compliance reports indicate

---

[2] In his response (Doc. 43), Plaintiff asserts for the first time that it was so cold that the water in the toilet froze. Plaintiff made no mention of the cell being so cold that water froze in his complaint or during his deposition. Plaintiff cannot create a genuine issue of fact by a statement contained in his brief. *Cf. Dotson v. Delta Consol. Industries, Inc.*, 251 F.3d 780, 781 (8th Cir. 2001)("a party may not create a question of material fact, and thus forestall summary judgment, by submitting an affidavit contradicting his own sworn statements in a deposition").

the jail temperature was kept at a proper level. *Defts' Exs.* B-2 at pg. 7 & B-3 at pg. 7. Plaintiff was confined at the MCDC for a short period of time, February 4th to February 22nd. He had blankets, although not as thick as he would like, to keep warm. No claim of constitutional dimension is stated. *See e.g.,* Dixon v. Godinez,, 114 F.3d 640, 644 (7th Cir. 1997)("[J]ust because low temperature forces a prisoner to bundle up in a coat and blanket does not necessarily mean that prison conditions violate the Eighth Amendment"); *see also Skelton v. Bruce*, 2010 WL 4342301, *4 (10th Cir. Nov. 3, 2010)(in considering inadequate heating claim, the court must consider the severity of the temperature, its duration, and whether the inmate had adequate alternatives to protect himself from cold).

In sum, while the conditions Plaintiff was subjected to may not have been pleasant, the evidence does not establish that he was deprived of a single identifiable human need. Defendants are therefore entitled to summary judgment in their favor on the conditions of confinement claims.

### C. Retaliation

Plaintiff maintains his move to the Boone County Jail was done in retaliation for his having filed grievances. In *L.L. Nelson Entrs., Inc. v. City of St. Louis, Mo.*, 673 F.3d 799, 807-08 (8th Cir. 2012) the court stated that:

> [t]o establish a § 1983 claim for retaliation in violation of the First Amendment, a plaintiff must allege (1) that [he] engaged in a protected activity, (2) that the defendants responded with adverse action that would chill a person of ordinary firmness from continuing the activity, and (3) that the adverse action was motivated at least in part by the exercise of the protected activity.

*Id*. (internal quotation marks and citations omitted). "The retaliatory conduct itself need not be a constitutional violation; the violation is acting in retaliation for the exercise of a constitutionally protected right." *Spencer v. Jackson County, MO,* ___ F.3d ___, 2013 WL 6801700, *3 (8th Cir. Dec. 26, 2013)(internal quotation marks and citation omitted). Adverse actions may include a denial

of privileges, acts worsening an inmate's working conditions, internal transfers to less desirable units, and transfer between prisons. *Id.* at *4-*5.

"In brief, the plaintiff must show the official took the adverse action because the plaintiff engaged in protected speech." *Revels v. Vincenz,* 382 F.3d 870, 876 (8th Cir. 2004). The filing of a grievance and the filing of a lawsuit is protected First Amendment activity. *Haynes v. Stephenson,* 588 F.3d 1152, 1155-56 (8th Cir. 2009).

With respect to the first prong, it is undisputed that Plaintiff had submitted three grievance prior to his transfer to Boone County. *Defts' Ex.* B-1 (grievances filed 2/8, 2/16, & 2/21). Clearly, Plaintiff engaged in protected activity.

With respect to the second prong, Plaintiff's was transferred to another detention facility. Clearly a transfer to another detention facility may constitute an adverse action. In this case, Plaintiff maintains Defendants systematically transferred inmates who filed grievances against the jail. He asserts he was "just another casualty of the systemic abuse" (Doc. 43 at pg. 6). However, the fact remains that Plaintiff was transferred to a detention facility where the conditions of confinement were more favorable.

With respect to the third prong, that the adverse action was causally related to the protected expression, I do not believe there is a question of fact as to whether the transfer was causally related to Plaintiff's exercise of the right of free speech. Plaintiff was incarcerated at the MCDC during a period of time when the facility was experiencing an unusually high volume of inmates. *Defts' Ex.* B. To relieve the overcrowding, a number of inmates, including the Plaintiff, were transferred to "neighboring facilities with more space." *Id.*

Plaintiff has failed to show a genuine issue of material fact as to whether Defendants took adverse action against him retaliation for engaging in constitutionally protected activity. *See*

*Sisneros v. Nix*, 95 F.3d 749, 752 (8th Cir. 1996)(inmate claiming retaliation is required to meet substantial burden of proving actual motivating factor for adverse action). Moreover, there is absolutely no evidence that the named Defendants were even involved in determining what inmates should be transferred. *See Martin v. Sargent,* 780 F.2d 1334, 1338 (8th Cir. 1985(to be liable, defendant in § 1983 action must be personally involved in or directly responsible for the conduct that caused the injury).

### 4.  Conclusion

For the reasons stated, I recommend that Defendants' motion for summary judgment (Doc. 38) be granted and the case dismissed with prejudice.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 23rd day of January 2014.

/s/ *J. Marschewski*
  HON. JAMES R. MARSCHEWSKI
  CHIEF UNITED STATES MAGISTRATE JUDGE